UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
NEW HAVEN DIVISION

----------------------------------------------------------------

Scott L. Fenstermaker,

        Plaintiff,

        v.

PNC Bank, National Association as trustee,
Martha Czymmek as executor, in her
individual capacity, and as agent of Lloyd
Fenstermaker, and Lloyd Fenstermaker,

        Defendants.

----------------------------------------------------------------

    AMENDED COMPLAINT

    Docket Number 3:17-CV-778 (JAM)

PLAINTIFF, Scott L. Fenstermaker ("Plaintiff"), herein alleges as follows:

## NATURE OF THE ACTION

1.   The instant action is an action pursuant to Plaintiff's rights described in 12 Delaware Code §§1311 and 3546 to attack the validity of a will and trust, seeking an accounting of Lloyd J. Fenstermaker's assets and personal affairs, to protect Plaintiff's rights of free speech and affiliation pursuant to the First and Fourteenth Amendments to the United States Constitution, and for claims sounding in tort against Defendants Lloyd Fenstermaker ("Defendant Fenstermaker") and Martha Czymmek ("Defendant Czymmek").

## PARTIES

2.   Plaintiff is domiciled the State of New York.

3.   Plaintiff is the adoptive son of Defendant Fenstermaker and the adoptive brother of Defendant Czymmek.

4.   Defendant PNC Bank, National Association ("Defendant PNC Bank") is a citizen of the Commonwealth of Pennsylvania, as its principal place of business is in Pittsburgh, Pennsylvania and it is a chartered under the laws of the United States in the State of Delaware. Defendant PNC Bank's main office, as stated in its Articles of Association, is located in Wilmington, Delaware.  With its main office in Delaware, for the purposes of diversity jurisdiction, Defendant PNC Bank is a citizen of Delaware. *See Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006).  In the alternative, if Defendant PNC Bank is not a resident of Delaware for the purposes of this action, then it is a resident of the Commonwealth of Pennsylvania.

5.   Defendant PNC Bank is sued herein solely in its capacity as the trustee of the revocable, *intervivos* trust that is the subject of this action.

6.   Defendant Czymmek is a citizen of the State of Connecticut and resides in the County of Fairfield, Town of Ridgefield.

7.   Defendant Czymmek is the daughter of Defendant Fenstermaker and the adoptive sister of Plaintiff.

8.   Defendant Czymmek is the executor of the will that is the subject of this action.

9.   Defendant Fenstermaker is a citizen of the State of Connecticut.[1]

---

[1] Defendant Czymmek and her husband Kirk Czymmek are holding Defendant Fenstermaker incommunicado from Plaintiff.  Plaintiff has made numerous requests of Defendant Fenstermaker, Defendant Czymmek, Kirk Czymmek, Stephen Fenstermaker, and Defendant Fenstermaker's purported Delaware attorney, seeking to learn Defendant Fenstermaker's whereabouts and current residence and mailing address.  Each has refused to provide Plaintiff with information regarding Defendant Fenstermaker's whereabouts, address, or state of residence or domicile or similar contact information.  Defendant Fenstermaker formerly resided in the State of Delaware, City of Newark.  Defendant Fenstermaker's telephone number at that address is no longer in service.  Stephen Fenstermaker informed Plaintiff that Defendant Fenstermaker "lives right across the street" from Defendant Czymmek.  Defendant Czymmek resides in Ridgefield, Connecticut and not near the border between Connecticut and New York.  Defendant Fenstermaker now resides in Ridgefield, Connecticut and is domiciled thereat.

2

10. Defendant Fenstermaker is the adoptive father of Plaintiff and the father by birth of Defendant Czymmek.

11. Defendant Fenstermaker is the testator of the last will and testament and settlor of the revocable, intervivos trust that are the subject of this action.

## NON-PARTIES

12. Stephen Fenstermaker is the adoptive son of Defendant Fenstermaker and the adoptive brother of Plaintiff and Defendant Czymmek.

13. Linda Fenstermaker is Plaintiff's estranged wife and the defendant in Plaintiff's divorce action in New York State Supreme Court, New York County.

14. Ashley Fenstermaker is Plaintiff's and Linda Fenstermaker's 19-year-old daughter.

15. Elena Fenstermaker is Plaintiff's and Linda Fenstermaker's 14-year-old daughter.

16. Sally McEwen is the deceased aunt of Plaintiff, Stephen Fenstermaker, and Defendant Czymmek.

17. Donald McEwen is the deceased uncle of Plaintiff, Stephen Fenstermaker, and Defendant Czymmek.

18. Donald McEwen was Sally's McEwen's husband at the time of Sally McEwen's September 1, 2012 death.

19. Donald McEwen died on April 3, 2015.

20. James David Scott was the younger brother of Sally McEwen and the brother-in-law of Donald McEwen.

21. James David Scott was the executor of Sally McEwen's estate.

22. Alice Carson Scott is James David Scott's wife and was the sister-in-law of Donald McEwen and Sally McEwen.

23. James David Scott and Alice Carson Scott will be referred to collectively herein as "the Scotts."

24. Jane Kavanaugh was Donald McEwen's sister.

25. Ahmed Khalfan Gailani is a detainee at the United States Bureau of Prison's facility at Florence, Colorado (ADX Florence). He is the first, and only, detainee from the United States Naval Station at Guantánamo Bay, Cuba to have been brought to the United States for prosecution in the United States Federal Court system. Plaintiff was Mr. Ghailani's attorney from the Fall of 2007 until June 16, 2009, and may very well remain Mr. Ghailani's chosen attorney.

26. Ammar al-Baluchi is a detainee in Camp 7 of the Joint Task Force at the United States Naval Station at Guantánamo Bay, Cuba. Mr. al-Baluchi is the nephew of Khalid Sheikh Mohammed, the alleged mastermind of the so-called September 11th terror attacks and is accused, along with his uncle and three other detainees housed in Camp 7, of helping plan, facilitate, and execute the so-called September 11th terror attacks. Plaintiff was Mr. al-Baluchi's attorney from the Fall of 2007 until January of 2010, and may very well remain Mr. al-Baluchi's chosen attorney.

27. Mustafa Bin Ahmed al Hawsawi is a detainee in Camp 7 of the Joint Task Force at the United States Naval Station at Guantánamo Bay, Cuba. Mr. al Hawsawi is accused, along with four other Camp7 detainees, including Mr. al Baluchi, of helping plan, facilitate, and execute the so-called September 11th terror attacks. Plaintiff was Mr. al Hawsawi's attorney

4

from the Fall of 2007 until November of 2009, and may very well remain Mr. al Hawsawi's chosen attorney.

**28.** Rahim al Nashiri is a detainee in Camp 7 of the Joint Task Force at the United States Naval Station at Guantánamo Bay, Cuba. Mr. al Nashiri is accused of being the so-called "mastermind" of the bombing of the USS Cole, a United States Navy vessel that was bombed in a port at Aden, Yemen in October of 2000. Plaintiff was Mr. al Nashiri's attorney until sometime in the Fall of 2009, and may very well remain Mr. al Nashiri's chosen attorney.

## JURISDICTION

29. This Court has jurisdiction over the first two causes of action in the instant action pursuant to the federal question provisions of 28 U.S.C. §1331 and the entirety of the action pursuant to the diversity jurisdiction provisions of 28 U.S.C. §1332. Plaintiff challenges the validity of a will and a trust that are the subjects of causes of action one and two respectively on a number of grounds, including state action in the suppression of his First and Fourteenth Amendments rights to speech and affiliation. Plaintiff is a citizen of the State of New York. Defendant PNC Bank is a citizen of either the Commonwealth of Pennsylvania or the State of Delaware. Defendant Fenstermaker is a citizen of the State of Connecticut. Defendant Czymmek is a citizen of the State of Connecticut. The amount in controversy in this matter exceeds $75,000.00.

## VENUE

30. Venue is appropriate in this district, pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the events giving rise to the claims brought herein occurred in the District of Connecticut and a substantial part of the property that is the subject of this action is located in the District of Connecticut, as it is owned by Defendant Fenstermaker.

## THE FACTS

31. Throughout the years, Defendant Czymmek has made a number of claims that Defendant Fenstermaker's health is failing.

32. Defendant Czymmek's claims about Defendant Fenstermaker's failing health were made to persuade Plaintiff and Stephen Fenstermaker that Defendant Czymmek needed to move Defendant Fenstermaker from Delaware to Connecticut so that Defendant Czymmek could assume control of Defendant Fenstermaker's affairs.

33. Defendant Czymmek has held Defendant Fenstermaker incommunicado from Plaintiff since on or about April 21, 2016.

34. Defendant Czymmek has failed to notify Plaintiff of her handling of Defendant Fenstermaker's affairs since she began handling them.

35. Defendant Fenstermaker has failed to respond to communication requests from Plaintiff since on or about April 21, 2016.

36. Plaintiff has made inquiries of Defendant Fenstermaker, Defendant Fenstermaker's purported Delaware-based attorney, Defendant Czymmek, Defendant Czymmek's husband Kirk, and Stephen Fenstermaker regarding Defendant Fenstermaker's mailing and residential addresses.

37. Defendant Fenstermaker's purported Delaware attorney is Defendant Cymmek's and Defendant Czymmek's husband's personal attorney.

38. Defendant Fenstermaker, Defendant Czymmek and Kirk Czymmek have refused to respond to Plaintiff's request for Defendant Fenstermaker's residential and mailing addresses.

39. Stephen Fenstermaker stateed that he does not know Defendant Fenstermaker's address.

6

40. Defendant Fenstermaker's purported Delaware-based attorney, who is Defendant Czymmek's and her husband's personal attorney, falsely informed Plaintiff's New York attorney that Defendant Fenstermaker does not want Plaintiff to know his address or whereabouts because Plaintiff has allegedly made threats against Defendant Fenstermaker, including sending him threatening letters.

41. Plaintiff has never threatened Defendant Fenstermaker in any manner by any means at any time.

42. Defendant Czymmek selected and hired her and her husband's personal attorney to falsely claim that Plaintiff has threatened Defendant Fenstermaker and is paying the attorney's fees from Defendant Fenstermaker's assets.

43. At this stage, Defendant Czymmek has complete control of Defendant Fenstermaker's finances.

44. At this stage, Defendant Czymmek has complete control of Defendant Fenstermaker's health care decision-making.

45. At this stage, Defendant Czymmek has complete control of Defendant Fenstermaker's person.

46. At this stage, Defendant Fenstermaker is completely dependent upon Defendant Czymmek and is unable to meaningfully communicate with others.

## DEFENDANT CZYMMEK'S DEMANDS THAT PLAINTIFF VIOLATE HIS FIDUCIARY DUTIES

47. At the time of Sally McEwen's September 1, 2012 death, her husband Donald McEwen was incapacitated and a resident of a nursing home in Central Pennsylvania.

7

48. As a result of Sally McEwen's death and Donald McEwen's incapacitation, Plaintiff began acting as attorney-in-fact for Donald McEwen pursuant to a general power of attorney.

49. Plaintiff acted as Donald McEwen's attorney-in-fact until his April 3, 2015 death.

50. Within approximately six hours of Sally McEwen's death, the Scotts demanded that Plaintiff, in his capacity as Donald McEwen's attorney-in-fact, illegally transfer one-half of Donald McEwen's liquid net worth to James David Scott, in his capacity as the executor of the estate of Sally McEwen.[4]

51. The Scotts demanded that Plaintiff illegally transfer one-half of Donald McEwen's liquid net worth to Sally McEwen's estate because they stood to benefit substantially more from Sally McEwen's estate (collectively one-third) than they stood to benefit from Donald McEwen's estate (collectively one-fifth), once he passed.

52. In furtherance of his fiduciary responsibilities to Donald McEwen, Plaintiff refused the Scotts' demand that he illegally transfer one-half of Donald McEwen's liquid net worth to James David Scott, as the liquid assets mentioned in Paragraphs 42 and 43 were held in joint accounts with rights of survivorship between and among Donald McEwen and Sally McEwen at the time of Sally McEwen's death.

53. Upon learning that Plaintiff refused to comply with their demand that he illegally transfer one-half of Donald McEwen's liquid assets to James David Scott, the Scotts began

---

[4] Approximately five months before Sally McEwen's death, the Scotts persuaded Sally McEwen to revoke her prior will, which provided for a disposition of 1/5 of her assets to the Scotts, and draft a new will, which provided for a disposition of 1/3 of her assets to the Scotts.

demanding that Plaintiff use Donald McEwen's personal property to pay Sally McEwen's estate's obligations.[5]

54. Defendant Czymmek, who was, and is, the Scotts' niece, contacted Plaintiff on either the Sunday of Thanksgiving weekend in 2012, or the next succeeding day, and demanded that Plaintiff use his fiduciary powers as attorney-in-fact for Donald McEwen to comply with the Scotts' demands that he illegally transfer Donald McEwen's personal property to James David Scott.

55. The Scotts' and Defendant Czymmek's demands that Plaintiff illegally transfer Donald McEwen's personal property James David Scott lasted for nearly three (3) years.

56. Shortly after Donald McEwen's April 3, 2015 death, Plaintiff was named the executor of his estate.

57. The Scotts' and Defendant Czymmek's demands that Plaintiff illegally transfer Donald McEwen's personal property to James David Scott continued after Donald McEwen's death.

58. The Scotts' and Defendant Czymmek's demands that Plaintiff illegally transfer Donald McEwen's estate's personal property to James David Scott ended when Plaintiff retained a Pennsylvania attorney and threatened to bring an action in Pennsylvania state court against James David Scott as a result of his refusal to execute Sally McEwen's estate.

59. James David Scott finally settled Sally McEwen's estate in the summer of 2015, nearly three years after her September 1, 2012 death.

---

[5] Sally McEwen's estate was governed by Pennsylvania law.  Pennsylvania law does provide for limited circumstances under which a decedent's spouse can be held liable for a decedent's estate's obligations.  None of these circumstances are triggered unless the decedent's estate is insolvent.  Sally McEwen's estate was never insolvent.

60. Contrary to the repeated claims of James David Scott, Sally McEwen's estate was never insolvent.

61. The Scotts had a significant financial incentive to secure the illegal transfer of assets from Donald McEwen and his estate to James David Scott as executor of Sally McEwen's estate, as they stood to gain substantially more property from Sally McEwen's estate than from Donald McEwen's estate.[6]

62. After Plaintiff refused Defendant Czymmek's November 2012 demands that he illegally violate his fiduciary duty to Donald McEwen by illegally transferring Donald McEwen's, and later his estate's, personal property to James David Scott, Defendant Czymmek began a campaign, which lasts to this day, of undermining Plaintiff's relationship with Defendant Fenstermaker.

## DEFENDANT'S FENSTERMAKER'S SUSPECT CAPACITY

63. For many years, Defendant Czymmek, in an effort to gain control over Defendant Fenstermaker and his assets, repeatedly notified Plaintiff and Stephen Fenstermaker of her concerns that Defendant Fenstermaker's ability to manage his daily affairs was diminishing.

64. In lodging her concerns with Plaintiff and Stephen Fenstermaker that Defendant Fenstermaker's capacity to manage his daily affairs was slipping, Defendant Czymmek implied, without explicitly stating, that she felt the need to assume control of Defendant Fenstermaker's care and affairs.

---

[6] Plaintiff and Defendant Czymmek would also have benefitted financially by assets being moved from Donald McEwen or his estate to James David Scott as executor of Sally McEwen's estate, but on a much smaller scale than the Scotts.

65. Defendant Czymmek, at a date no later than December 18, 2016 and without explanation or notification to either Plaintiff or Stephen Fenstermaker, assumed control of Defendant Fenstermaker's financial affairs.

66. In December of 2016, Defendant Czymmek moved Defendant Fenstermaker from his home in Newark, Delaware to Ridgefield, Connecticut.[7]

67. Defendant Czymmek did not notify Plaintiff or Stephen Fenstermaker that she had moved their father, Defendant Fenstermaker, from Delaware to Connecticut.

68. Plaintiff has not heard from Defendant Fenstermaker since April 21, 2016.

69. Plaintiff has made numerous attempts to learn Defendant Fenstermaker's residential address and mailing address subsequent to April 21, 2016.

70. Plaintiff's efforts to learn Defendant Fenstermaker's address were unsuccessful until June of 2017, when Plaintiff's process server in this matter was able to uncover Defendant Fenstermaker's Connecticut home address.

71. On or about March 31, 2017, a Defendant Czymmek's and her husband's Delaware-based attorney, claiming to represent Defendant Fenstermaker, contacted Plaintiff's New York-based attorney, informing Plaintiff's attorney that Defendant Fenstermaker would not provide Plaintiff with his address or his whereabouts because Plaintiff allegedly threatened Defendant Fenstermaker.

72. Plaintiff has never threatened Defendant Fenstermaker.

73. Stephen Fenstermaker informed Plaintiff that in 2016, Defendant Fenstermaker suffered an injury and that Defendant Fenstermaker had been hospitalized for some time.

---

[7] *See* footnotes one, two, and three *supra*.

11

74. Stephen Fenstermaker informed Plaintiff that after Defendant Fenstermaker suffered his injury and endured his hospitalization, Defendant Fenstermaker was difficult to understand and did not exhibit coherent thought processes when communicating with Stephen Fenstermaker.

75. Defendant Fenstermaker fell and fractured his hip in October of 2016, one month prior to executing the last will and revocable *intervivos* trust instrument that are the subject of this action.

76. Defendant Fenstermaker was institutionalized in a senior facility in Newark, Delaware from the time he fell and fractured his hip until December of 2016, including on the day that he executed the last will and testament and revocable *intervivos* trust instrument that are the subject of this action.

77. During Defendant Fenstermaker's institutionalization, he received numerous undisclosed medications and was treated by doctors, nurses, and other specialists.

78. Defendant Fenstermaker's cognitive abilities were impaired during his institutionalization.

79. Defendant Fenstermaker suffered a "mini-stroke" and is unable to specify when he suffered this "mini-stroke."

80. Defendant Fenstermaker apparently believes that Plaintiff's birthday is April 24th. Plaintiff's birthday is not April 24th.

## DEFENDANT CZYMMEK'S UNDUE INFLUENCE

81. Plaintiff had been named as Defendant Fenstermaker's executor in his last will and testament for a period of approximately 15 to 20 years prior to November of 2012.

82. Plaintiff had been named as a one-third beneficiary in Defendant Fenstermaker's last will and testament for approximately 15 to 20 years prior to November of 2012.

83. Defendant Fenstermaker's last will and testament described in the preceding two paragraphs was in effect until November 28, 2016, when Defendant Fenstermaker executed the will and revocable *intervivos* trust that are the subject of this action.

84. In November of 2012, Defendant Czymmek berated Plaintiff for refusing to illegally transfer Donald McEwen's personal property to James David Scott.

85. Shortly after November of 2012, Defendant Fenstermaker executed a codicil to his prior last will and testament removing Plaintiff as the executor of Defendant Fenstermaker's last will and testament and replaced Plaintiff with Defendant Czymmek.

86. Defendant Fenstermaker did not inform Plaintiff that Defendant Fenstermaker removed Plaintiff as the executor of his last will and testament until approximately two years after this change had been effectuated, and then only in response to questions that Plaintiff asked Defendant Fenstermaker regarding the assets that Plaintiff would have to marshal should he need to execute Defendant Fenstermaker's prior last will and testament.

87. At some point, Defendant Czymmek secured a general power of attorney authorizing her to act as attorney-in-fact for Defendant Fenstermaker.

88. Defendant Czymmek is apparently using this general power of attorney to manage Defendant Fenstermaker's affairs and was doing so no later than December 18, 2016.

89. Defendant Czymmek secured a health care proxy, authorizing her to act as Defendant Fenstermaker's health care decision maker.

90. On November 28, 2016, Defendant Fenstermaker executed a last will and testament, revoking his prior last will and testament.

91. A copy of Defendant Fenstermaker's November 2016 last will and testament is attached hereto as Exhibit A.

92. Defendant Fenstermaker's last will and testament that was superseded by his November 2016 last will and testament had been in effect for approximately 15 or 20 years.

93. Defendant Fenstermaker's November 2016 last will and testament revoked his prior dispositive scheme of providing 1/3 shares of his estate to Plaintiff, Stephen Fenstermaker, and Defendant Czymmek.

94. Defendant Fenstermaker's November 2016 last will and testament provides that his entire estate, absent personal effects, would be distributed into the revocable *intervivos* trust that is the subject of this action.

95. On November 28, 2016, Defendant Fenstermaker executed the trust instrument of the revocable *intervivos* trust that is the subject of this litigation.

96. A copy of the revocable *intervivos* trust instrument is attached hereto as Exhibit B.

97. Defendant Fenstermaker's November 2016 last will and testament explicitly excluded Plaintiff as a named beneficiary.

98. Defendant Fenstermaker's November 2016 revocable *intervivos* trust instrument explicitly excluded Plaintiff as a named beneficiary.

99. On January 17, 2017, Plaintiff was provided notice, pursuant to 12 Delaware Statutes §§1311 and 3546, of his apparent right to bring legal challenges to the last will and testament of Defendant Fenstermaker and an *intervivos* revocable trust created by Defendant Fenstermaker.

14

100.      The notice provided to Plaintiff on January 17, 2017 of his right to contest Defendant Fenstermaker's last will and testament pursuant to 12 Delaware Code §1311 is attached hereto as Exhibit C.

101.      Although 12 Delaware Code §1311 only applies when the testator resides in Delaware at the time of his or her death, Defendant Fenstermaker relocated from Delaware to Connecticut on December 10, 2016, 13 days after executing his last will and testament and about six weeks *before* Defendant Fenstermaker's Delaware attorney provided the section 1311 notice to Plaintiff.

102.      Defendant Fenstermaker has acknowledged, under oath, that his attorney provided notice of Plaintiff's right to challenge Defendant Fenstermaker's last will and testament on a date *after* Defendant Fenstermaker had moved from Delaware to Connecticut.

103.      The notice provided to Plaintiff on January 17, 2017 of his right to contest Defendant Fenstermaker's intervivos revocable trust pursuant to 12 Delaware Code §3546 is attached hereto as Exhibit D.

104.      Plaintiff has made several efforts to obtain the trust instrument of which Plaintiff was notified on January 17, 2017 by contacting both the attorney who sent Plaintiff Exhibits A, C, and D and the trust's trustee, Defendant PNC Bank.

105.      Neither Defendant Fenstermaker's Delaware-based attorney nor Defendant PNC Bank provided Plaintiff with a copy of the trust instrument.[8]

106.      Defendant Fenstermaker has acknowledged, under oath, that Defendant Czymmek has been involved in his estate planning.

### LINDA FENSTERMAKER'S UNDUE INFLUENCE

---

[8] Plaintiff subsequently received a copy of this trust instrument in July of 2017 from Defendant Fenstermaker's attorney.

15

107.     The terms of Defendant Fenstermaker's current post-*mortem* dispositive scheme are such that it divides his wealth into three shares and, in effect, gives one-third to Defendant Czymmek, one-third to Stephen Fenstermaker, and one-third to Plaintiff's estranged wife, Linda Fenstermaker.

108.     Linda Fenstermaker is not named herein, as she is the defendant in on-going litigation in the New York State Supreme Court in New York County involving, among other things, her undue influence in procuring her inheritance described in the preceding paragraph.

109.     Linda Fenstermaker repeatedly communicated with Defendant Czymmek and Defendant Fenstermaker in an effort to influence Defendant Fenstermaker's disposition of his assets subsequent to his death.

110.     Linda Fenstermaker repeatedly referred to Defendant Fenstermaker's assets and her claims that Plaintiff would take one-third of them in structuring the family's finances between Plaintiff and Linda Fenstermaker during the term of their marriage.

111.     Linda Fenstermaker repeatedly demanded extra consideration and dispensation in the family's savings, investments, and retirement planning because of her claims that Plaintiff would inherit from Defendant Fenstermaker.

112.     Linda Fenstermaker repeatedly misrepresented, mischaracterized, and misled Defendants Fenstermaker and Czymmek regarding the financial condition of her and Plaintiff's family in an effort to cast Plaintiff in a bad light and to garner financial support from Defendant Fenstermaker.

113.     Linda Fenstermaker's mischaracterizations, misleading statements, and misrepresentations served, through Defendant Czymmek, to unduly influence Defendant

16

Fenstermaker in the making of his dispositive scheme to include the direct procurement of her bequest by the use of fraud.

## KIRK CZYMMEK MURDER PLOT

114.     In or about 2013 or 2014, Defendant Czymmek informed Plaintiff that she was convinced that her husband, Kirk Czymmek, was having an extramarital affair.

115.     Defendant Czymmek informed Plaintiff that she was convinced that Kirk Czymmek, in order to facilitate the extramarital affair that Defendant Czymmek imagined him to be having, had hatched a plot to either murder Defendant Czymmek by himself, or have her murdered by unidentified others.

116.     As evidence that Kirk Czymmek was attempting to murder her or to have her murdered by others, Defendant Czymmek informed Plaintiff that the muffler to her car fell off when she was on the interstate.

117.     Defendant Czymmek told Plaintiff that the muffler fell off of her car because Kirk sawed it off in an attempt to asphyxiate her with carbon monoxide.

118.     In further support of her claim that Kirk Czymmek was trying to murder her or to otherwise have others murder her, Defendant Czymmek informed Plaintiff that truckers on Interstate 80 in Pennsylvania were trying to run her off of the road when she was driving from her home in Connecticut to Pittsburgh, Pennsylvania.

119.     Defendant Czymmek explained to Plaintiff that Kirk had procured the services of the truckers on Interstate 80 in Pennsylvania to run Defendant Czymmek off of the road to kill her.

120.     Defendant Czymmek informed Plaintiff that she was also convinced that Kirk would murder her in her home in Ridgefield, Connecticut.

17

121.     Defendant Czymmek explained to Plaintiff that in order to frustrate Kirk's efforts to murder her in her home, Defendant Czymmek would insist that Kirk bring their two sons outside of the house with Kirk so that Defendant Czymmek could assure herself that Kirk was not lying in wait to murder Defendant Czymmek, in front of their sons, when Defendant Czymmek returned home from being out.

122.     Defendant Czymmek informed Plaintiff that in order to frustrate Kirk Czymmek's murder plot, Defendant Czymmek reported Kirk Czymmek's alleged scheme to the local police department with jurisdiction over the Czymmeks' home in Ridgefield, Connecticut.

123.     It is unclear what, if any, actions the Ridgefield Police Department took upon learning of Kirk Czymmek's alleged murder scheme.

## PLAINTIFF'S INVOLVEMENT IN REPRESENTING DETAINEES AT GUANTÀNAMO BAY AND HIS RELATED MEDIA EXPOSURE

124.     Plaintiff has represented a number of detainees who are, or were, housed in Camp 7 of the Joint Task Force at the United States Naval Station at Guantánamo Bay, Cuba. Camp 7 is the prison complex at the Joint Task Force which houses the Guantánamo Bay-detained prisoners who were formerly housed in the Central Intelligence Agencies' so-called "Black Site" prison system.  Because of Plaintiff's former clients' prior detention in the CIA's Black Site prison system, these matters are classified at the level of Top Secret – Sensitive Compartmentalized Information ("TS-SCI") and are the subject of numerous protective orders both at the Office of Military Commissions and in the United States District Court for the District of Columbia.

125.     Pursuant to Plaintiff's efforts at Guantánamo Bay, he represented Mustafa bin Ahmed al-Hawsawi and Ammar al-Baluchi, both charged with facilitating the so-called September 11th terror attacks, Rahim al-Nashiri, the alleged mastermind of the bombing of the

USS Cole in October of 2000 in Aden, Yemen, and Ahmed Khalfan Ghailani, who was alleged, and ultimately convicted, of participating in the bombing of the United States Embassies in Kenya and Tanzania in September of 1998.

126.     Plaintiff represented Mr. Ghailani in his military commission matter at Guantánamo Bay, in a petition for *habeas corpus* in the United States District Court for the District of Columbia, *see Ghailani v. Gates*, 08 cv 1190 (RJL) in his Detainee Treatment Act petition in the United States Court of Appeals for the District of Columbia, *see Ghailani v. Gates*, No. 08-1209, in petition for *habeas corpus* relief in the United States District Court for the Southern District of New York, *see Ghailani v. United States of America*, 09-CV-3551 (SAS) and briefly in Mr. Ghailani's criminal trial in the United States District Court for the Southern District of New York, *see United States v. Ghailani, et. al.*, S(10) 98 CR 1023 (LAK). Similarly, Plaintiff represented Messrs. al Nashiri, al Baluchi, and al Hawsawi with respect to their petitions for writs of *habeas corpus* in the United States District Court for the District of Columbia, *see al Nashiri v. Obama*, 08-cv-1207 (RWR); *al Baluchi v. Gates*, 08-cv-2083 (PLF), and *al Hawsawi v. Gates*, 08-cv-1645 (RJL) respectively. These efforts ended no later than January of 2010, although it is likely that because of the circumstances surrounding Plaintiff's removal from these detainees' cases, Plaintiff is still their counsel of choice.

127.     Plaintiff handled these matters on a *pro bono* basis and never received any compensation or reimbursement of expenses for these matters.

128.     In an affidavit dated August 1, 2017, submitted in support of his motion for summary judgment in this action (the "Fenstermaker Affidavit"), Defendant Fenstermaker explains that among the reasons that he disinherited Plaintiff is that "[t]he sad truth of the matter is that for many years, my son has been unable or unwilling to use his considerable intellect to

19

properly provide for himself, his wife, Linda, and their two daughters, Ashley, 19 years of age, and Elena, 14 years of age." *See* Fenstermaker Affidavit, Paragraph 16.[9]

129.    Defendant Fenstermaker, in the Fenstermaker Affidavit, also states that Plaintiff "has publicly boasted of his legal representation of known *Al Qaeda* terrorists, and extolled the World Trade Center tragedy of September 11, 2001 as 'deserved' and 'one of the greatest events in human history.'"  Fenstermaker Affidavit, Paragraph 21, *citing* New York Daily News, July 13, 2016.  Defendant Fenstermaker went on to claim that "I fear that my son, Scott, is mentally unbalanced and that, having been trained in warfare and weaponry at the United States Air Force Academy, he is physically capable of inflicting harm upon others." *Id.*

130.    In support of his motion for summary judgment, Defendant Fenstermaker attached a number of exhibits to the Fenstermaker Declaration.  Exhibit 6 to the Fenstermaker Affidavit filed in support of his motion for summary judgment, was a July 13, 2016 article from the New York Daily News which profiled Plaintiff during his recent candidacy for a seat in the United States House of Representatives for New York's 13th Congressional District in 2016.

131.    On the first page of the Daily News article is a photograph of Plaintiff leaving the courthouse for the United States District Court for the Southern District of New York on June 9, 2009.  Ahmed Khalfan Ghailani was brought from the United States Naval Station at Guantánamo Bay earlier that morning.  The photograph depicted in Defendant Fenstermaker's Affidavit, Exhibit 6, is of Plaintiff leaving the courthouse after, just moments before, having represented Mr. Ghailani at his Federal court arraignment in *United States v. el Hage*, 98 CR 1023 (LAK).  This indictment involved allegations that Mr. Ghailani was involved in the

---

[9] Defendant Fenstermaker is, and was, wholly unaware of Plaintiff's financial condition, the support he provided and continues to provide to his family, and has never raised any concerns about either Plaintiff's financial condition or his financial support of his family at any time or in any way prior to submitting the Fenstermaker Affidavit.

bombing of the United States' embassies in Kenya and Tanzania in September of 1998.  At the time, Mr. Ghailani potentially faced the death penalty as a result of these allegations.

132.     On the second page of the Daily News article is a photograph of Plaintiff as he is speaking with constituents in New York State's 13th Congressional District as Plaintiff was gathering signatures for his petition to be placed on the ballot for the November 2016 general election for a seat in the United States House of Representatives from that District.

133.     On the fifth page of the Daily News article is a photograph of Plaintiff as he was giving an interview to a journalist from a well-known website called Humans of New York.  The substance of this interview involved Plaintiff's congressional campaign and his representation of detainees detained at the Joint Task Force at the United States Naval Station at Guantánamo Bay, Cuba.  When this interview was conducted, Plaintiff was gathering signatures for his petition to be placed on the ballot as described in the preceding paragraph.

134.     On the sixth page of the Daily News article is a photograph shot shortly before the photograph described in Paragraph 132 above.  In both photographs, Petitioner was depicted as he campaigned for a seat in the United States House of Representatives from New York's 13th Congressional District.

135.     Defendant Fenstermaker seeks to invoke the power of the state courts of both Delaware and Connecticut, in support Defendant Fenstermaker's efforts to punish Plaintiff, an admitted attorney, for clients he has represented, positions that he has taken in court on those clients' behalf and in furtherance of his clients' interests, for positions that he took as a candidate for the United States House of Representatives, and for the fact that Plaintiff has, at some unknown level (even to Plaintiff), suffered a diminution of income and assets as a result of his *pro bono* efforts on behalf of criminal defendants, each of whom was, at one point, facing the

death penalty while represented by Plaintiff as a result of their alleged involvement in some of the most notorious events in human history.

## FIRST CAUSE OF ACTION

Plaintiff Seeks Invalidation of Defendant Fenstermaker's
November 28, 2016 Last Will and Testament

136.     Plaintiff incorporates paragraphs one through 135 above as if incorporated herein in their entirety.

137.     Defendant Fenstermaker was not of sound mind and body on November 28, 2016 when he purportedly executed his last will and testament attached hereto as Exhibit A.

138.     As stated above, Defendant Fenstermaker has not communicated with Plaintiff after April 21, 2016.

139.     Defendant Fenstermaker, Defendant Fenstermaker's Delaware-based attorney, who is also Defendant Czymmek's and her husband's personal attorney, Stephen Fenstermaker, Defendant Czymmek, and Kirk Czymmek have refused to provide Plaintiff with Defendant Fenstermaker's residential and mailing address.

140.     Plaintiff sent two e-mails to Defendant Fenstermaker asking for Defendant Fenstermaker's address in March of 2017.

141.     Defendant Fenstermaker did not respond to Plaintiff's e-mailed requests for Defendant Fenstermaker's address.

142.     It is unclear, at this stage, whether Defendant Fenstermaker has access to, or has the ability to access, his e-mail account.

143.     Defendant Czymmek has pressured Defendant Fenstermaker to remove Plaintiff as the executor of Defendant Fenstermaker's last will and testament as a result of her

displeasure with Plaintiff's refusal to illegally transfer Donald McEwen's and his estate's assets to James David Scott.

144.     Defendant Czymmek has sent e-mails over the years to both Plaintiff and to Stephen Fenstermaker stating that Defendant Fenstermaker's health is declining and that he can no longer take care of himself.

145.     Defendant Fenstermaker is, at this stage, totally reliant on Defendant Czymmek in every respect.

146.     Defendant Czymmek is holding Defendant Fenstermaker incommunicado from Plaintiff.

147.     Defendant Czymmek has used her relationship with Defendant Fenstermaker to bully and intimidate Defendant Fenstermaker in changing his wishes from an even distribution of his assets to his three children.

148.     Defendant Czymmek has misrepresented material facts to Defendant Fenstermaker in order to gain control over Defendant Fenstermaker's assets and health care decision making, thereby inducing Defendant Fenstermaker to execute the November 2016 last will and testament and the revocable, *intervivos* trust that are the subjects of this action.

149.     Defendant Czymmek has misrepresented material facts to Defendant Fenstermaker in order to persuade him to provide her with complete control over his assets.

150.     The material facts that Defendant Czymmek has misrepresented to Defendant Fenstermaker in an effort to cajole Defendant Fenstermaker into granting Defendant Czymmek control over his affairs and health care, changing his will, and creating the revocable, *intervivos* trust are material facts regarding Plaintiff's refusal to illegally transfer Donald McEwen's and his estate's personal property to James David Scott and with respect to Plaintiff's

alleged threats to Defendant Fenstermaker and third parties and material facts regarding Plaintiff's personal financial condition and his support of his family.

151.     Defendant Czymmek procured Defendant Fenstermaker's November 28, 2016 last will and testament, in part, to punish Plaintiff for his refusal to illegally transfer Donald McEwen's and his estate's personal property to James David Scott.

152.     As a result of Defendant Czymmek's undue influence and misrepresentation, Defendant Fenstermaker executed his November 28, 2016 last will and testament, in part, to punish Plaintiff for his refusal to illegally transfer Donald McEwen's and his estate's personal property to James David Scott.

153.     Defendant Czymmek, who is a registered dietician, has used her medical training and her health care proxy over Defendant Fenstermaker's health care to manipulate and incapacitate Defendant Fenstermaker in an effort to influence him into specifically excluding Plaintiff as a beneficiary of Defendant Fenstermaker's last will and testament.

154.     Linda Fenstermaker repeatedly communicated with Defendant Czymmek and Defendant Fenstermaker in an effort to influence Defendant Fenstermaker's disposition of his assets subsequent to his death.

155.     Linda Fenstermaker repeatedly referred to Defendant Fenstermaker's assets and her claims that Plaintiff would take one-third of them in structuring the family's finances between Plaintiff and Linda Fenstermaker during the term of their marriage.

156.     Linda Fenstermaker repeatedly demanded extra consideration and dispensation in the family's savings, investments, and retirement planning because of her claims that Plaintiff would inherit from Defendant Fenstermaker.

24

157.    Linda Fenstermaker repeatedly misrepresented, mischaracterized, and misled Defendants Fenstermaker and Czymmek regarding the financial condition of her and Plaintiff's family in an effort to cast Plaintiff in a bad light and to garner financial support from Defendant Fenstermaker.

158.    Linda Fenstermaker's mischaracterizations, misleading statements, and misrepresentations served, through Defendant Czymmek, to unduly influence Defendant Fenstermaker in the making of his dispositive scheme to include the direct procurement of her bequest by the use of fraud.

159.    Defendant Fenstermaker executed the last will and testament attached hereto as Exhibit A in an effort to punish Plaintiff, who is an admitted attorney, for clients he has represented, positions that he has taken in court and in furtherance of his clients' interests, for positions that he took as a candidate for the United States House of Representatives, and for the fact that Plaintiff has, at some unknown level, suffered a diminution of income and assets as a result of his *pro bono* efforts on behalf of criminal defendants, each of whom was, at one point, facing the death penalty while represented by Plaintiff.

160.    For these reasons, Plaintiff seeks an Order of this Court directing that Defendant Fenstermaker's last will and testament be invalidated based upon Defendant Fenstermaker's lack of testamentary capacity, Defendant Czymmek's and Linda Fenstermaker's undue influence in Defendant Fenstermaker's decision making that led to the will's execution, duress caused by Defendant Czymmek's influence on Defendant Fenstermaker at the time of Defendant Fenstermaker's execution of his November 28, 2016 last will and testament, and as Defendant Fenstermaker's November 28, 2016 last will and testament violates public policy, as it was executed to punish Plaintiff for his proper exercise of his fiduciary duties as the attorney-

in-fact of Donald McEwen and as the executor of the Estate of Donald McEwen and as

Defendant Fenstermaker seeks state action by court involvement to secure the punishment for

Plaintiff's exercise of his First and Fourteenth Amendments rights to free speech and affiliation

as described above.

## SECOND CAUSE OF ACTION

Plaintiff Seeks Invalidation of Defendant Fenstermaker's
Undated, Undisclosed Revocable *Intervivos* Trust

161.    Plaintiff incorporates paragraphs one through 160 above as if incorporated

herein in their entirety.

162.    Defendant Fenstermaker was not of sound mind and body on the date

when he purportedly settled the revocable *intervivos* trust that is the subject of this matter.  A

copy of the revocable *intervivos* trust instrument is attached hereto as Exhibit B.

163.    As stated above, Defendant Fenstermaker has not communicated with

Plaintiff since April 21, 2016.

164.    Defendant Fenstermaker, Defendant Fenstermaker's Delaware-based

attorney, who is also Defendant Czymmek's and her husband's personal attorney, Stephen

Fenstermaker, Kirk Czymmek and Defendant Czymmek have refused to provide Plaintiff with

Defendant Fenstermaker's residential or mailing address.

165.    It is unclear, at this stage, whether Defendant Fenstermaker has access to,

or has the ability to access, his e-mail account.

166.    Defendant Czymmek has sent e-mails over the years to both Plaintiff and

to Stephen Fenstermaker stating that Defendant Fenstermaker's health is declining and that he

can no longer take care of himself.

167.    Defendant Czymmek has pressured Defendant Fenstermaker to remove Plaintiff as the executor of Defendant Fenstermaker's last will and testament as a result of her displeasure with Plaintiff's refusal to illegally transfer Donald McEwen's and his estate's assets to James David Scott.

168.    Defendant Fenstermaker is, at this stage, totally reliant on Defendant Czymmek.

169.    Defendant Czymmek is holding Defendant Fenstermaker incommunicado from Plaintiff.

170.    Defendant Czymmek has used her relationship with Defendant Fenstermaker to bully and intimidate Defendant Fenstermaker in changing his wishes from an even distribution of his assets to his three children.

171.    Defendant Czymmek has misrepresented material facts to Defendant Fenstermaker in order to persuade him to provide her with complete control over his assets.

172.    The material facts that Defendant Czymmek has misrepresented to Defendant Fenstermaker in an effort to cajole Defendant Fenstermaker into changing his dispositive scheme are material facts regarding Plaintiff's refusal to illegally transfer Donald McEwen's and his estate's personal property to James David Scott and with respect to Plaintiff's alleged threats to Defendant Fenstermaker and third parties and material facts regarding Plaintiff's personal financial condition and his support of his family.

173.    Defendant Fenstermaker executed his revocable, intervivos trust, in part, to punish Plaintiff for his refusal to illegally transfer Donald McEwen's and his estate's personal property to James David Scott.

27

174.     Defendant Czymmek, who is a registered dietician, has used her medical training and her health care proxy over Defendant Fenstermaker's health care to manipulate and incapacitate Defendant Fenstermaker in an effort to influence him into specifically excluding Plaintiff as a beneficiary of Defendant Fenstermaker's revocable, *intervivos* trust.

175.     Linda Fenstermaker repeatedly communicated with Defendant Czymmek and Defendant Fenstermaker in an effort to influence Defendant Fenstermaker's disposition of his assets subsequent to his death.

176.     Linda Fenstermaker repeatedly referred to Defendant Fenstermaker's assets and her claims that Plaintiff would take one-third of them in structuring the family's finances between Plaintiff and Linda Fenstermaker during the term of their marriage.

177.     Linda Fenstermaker repeatedly demanded extra consideration and dispensation in the family's savings, investments, and retirement planning because of her claims that Plaintiff would inherit from Defendant Fenstermaker.

178.     Linda Fenstermaker repeatedly misrepresented, mischaracterized, and misled Defendants Fenstermaker and Czymmek regarding the financial condition of her and Plaintiff's family in an effort to cast Plaintiff in a bad light and to garner financial support from Defendant Fenstermaker.

179.     Linda Fenstermaker's mischaracterizations, misleading statements, and misrepresentations served, through Defendant Czymmek, to unduly influence Defendant Fenstermaker in the making of his dispositive scheme to include the direct procurement of her bequest by the use of fraud.

180.     Defendant Fenstermaker executed the trust instrument attached hereto as Exhibit B in an effort to punish Plaintiff, who is an admitted attorney, <u>for clients he has</u>

28

represented, positions that he has taken in court and in furtherance of his clients' interests, for positions that he took as a candidate for the United States House of Representatives, and for the fact that Plaintiff has, at some unknown level, suffered a diminution of income as a result of his *pro bono* efforts on behalf of criminal defendants, each of whom was, at one point, facing the death penalty while represented by Plaintiff.

181.    For these reasons, Plaintiff seeks an Order of this court invalidating Defendant Fenstermaker's undisclosed revocable *intervivos* trust based upon Defendant Fenstermaker's lack of dispositive capacity at the time of the trust's execution, Defendant Czymmek's undue influence in Defendant Fenstermaker's decision making regarding the trust's creation, duress caused by Defendant Czymmek's influence on Defendant Fenstermaker at the time of Defendant Fenstermaker's execution of his revocable, *intervivos* trust, and as Defendant Fenstermaker's revocable, *intervivos* trust violates public policy, as it was executed to punish Plaintiff for his proper exercise of his fiduciary duties as the attorney-in-fact of Donald McEwen and as the executor of the Estate of Donald McEwen and as Defendant Fenstermaker seeks state action by court involvement to secure the punishment for Plaintiff's exercise of his First and Fourteenth Amendments rights to free speech and affiliation as described above.

## THIRD CAUSE OF ACTION

For an Accounting of the Assets of Defendant Fenstermaker

182.    Plaintiff incorporates paragraphs one through 181 above as if incorporated herein in their entirety.

183.    Defendant Fenstermaker has recently suffered at least three strokes.

184.    Defendant Fenstermaker is currently confined to the intensive care unit of the Danbury hospital.

185.     Defendant Fenstermaker is unable to manage his financial affairs.

186.     Defendant Fenstermaker stopped writing checks on his personal checking account as of October 8, 2016.

187.     Defendant Fenstermaker's individual financial statements are being sent to Defendant Czymmek's home address.

188.     Defendant Czymmek is presently writing checks drawn on Defendant Fenstermaker's bank accounts and has been since at least December 18, 2016.

189.     Upon information and belief, Defendant Czymmek currently has complete control over Defendant Fenstermaker's assets.

190.     Upon information and belief, Defendant Czymmek currently has complete control over Defendant Fenstermaker's health care decision making.

191.     Defendant Czymmek repeatedly demanded that Plaintiff violate his fiduciary duties to Donald McEwen and to the beneficiaries of Donald McEwen's estate by using Plaintiff's authority pursuant to a general power of attorney and as the executor of the Estate of Donald McEwen to illegally transfer Donald McEwen's and his estate's personal property to James David Scott.

192.     Defendant Czymmek demanded that Plaintiff violate his fiduciary duties to Donald McEwen and Donald McEwen's estate in order to illegally enrich herself and the Scotts at the expense of Donald McEwen and his sister Jane Kavanaugh.

193.     Defendant Czymmek is currently in the position of being able to dissipate and/or loot Defendant Fenstermaker's assets, as she demanded that Plaintiff do to Donald McEwen and his estate in furtherance of the Scotts' scheme to enrich themselves and Defendant Czymmek.

194.     Under the circumstances presented here, including Defendant Fenstermaker's suspect capacity, the undue influence exerted by Defendant Czymmek as described above, the duress imposed by Defendant Czymmek against Defendant Fenstermaker, and the public policy issues surrounding Defendant Fenstermaker's execution of his November 28, 2016 last will and testament and his revocable, intervivos trust of unknown date, that an accounting of Defendant Fenstermaker's assets is in order.

195.     Plaintiff respectfully requests that this Court order an accounting of Defendant Fenstermaker's assets from November 28, 2016 until the present.

## FOURTH CAUSE OF ACTION

Tortious Interference with an Expected
Inheritance Against Defendant Czymmek

196.     Plaintiff incorporates paragraphs one through 195 above as if incorporated herein in their entirety.

197.     Defendant Fenstermaker had, during his lifetime, promised Defendant Czymmek, Plaintiff, and Stephen Fenstermaker that each would receive 1/3 of his estate upon his passing.

198.     Defendant Czymmek was well-aware that Plaintiff was a promised one-third beneficiary of Defendant Fenstermaker's estate.

199.     In 2014 or 2015, Defendant Fenstermaker orally told Plaintiff that he would "never" disinherit Plaintiff.

200.     From 2012 until November of 2016, Defendant Czymmek executed a plan to ingratiate herself with Defendant Fenstermaker, in an effort to exclude Plaintiff from taking under Defendant Fenstermaker's last will and testament.

31

201.      Defendant Czymmek's plan to interfere with Plaintiff's expected inheritance began, and was conducted as a result of, Plaintiff's refusal to illegally transfer Donald McEwen's and his estate's personal property to James David Scott.

202.      Defendant Czymmek found Plaintiff's execution of his fiduciary duties to Donald McEwen and Donald McEwen's sister, Jane Kavanaugh, to violate what Defendant Czymmek saw as Plaintiff's superseding obligation to enrich his and Defendant Czymmek's own family members at Donald McEwen's and Jane Kavanaugh's expense.[10]

203.      Shortly after upbraiding Plaintiff because of his refusal to illegally transfer Donald McEwen's personal property to James David Scott, Defendant Czymmek convinced Defendant Fenstermaker to execute a codicil to Defendant Fenstermaker's then last will and testament removing Plaintiff as the executor of that will and replacing Plaintiff with Defendant Czymmek.

204.      After securing Plaintiff's removal as the executor of Defendant Fenstermaker's long-time last will and testament, Defendant Czymmek then procured Plaintiff's removal as a beneficiary of Defendant Fenstermaker's November 28, 2016 last will and testament and the undisclosed revocable, intervivos trust.[11]

205.      Defendant Czymmek accomplished Plaintiff's removal as a beneficiary of Defendant Fenstermaker's November 28, 2016 last will and testament by falsely making claims about Plaintiff's refusal to transfer Donald McEwen's and his estate's personal property to James David Scott, regarding allegations that Plaintiff threatened Defendant Fenstermaker and others,

---

[10] Jane Kavanaugh is a 50 percent beneficiary of Donald McEwen's estate.  She was a one-third beneficiary of Sally McEwen's estate.  The Scotts' efforts to enrich themselves by bullying Plaintiff into transferring personal property from Donald McEwen and his estate to Sally McEwen's estate to James David Scott would have been at Jane Kavanaugh's considerable expense.

[11] *See* Exhibits A, B, and C.

by making false claims regarding Plaintiff's financial condition and Plaintiff's support of his family, and by alerting Defendant Fenstermaker of news articles about Plaintiff that Defendant Czymmek knew would raise Defendant Fenstermaker's ire.

206.    By convincing Defendant Fenstermaker to alter his promised dispositive plan in a manner that deprived Plaintiff of his expected inheritance, Defendant Czymmek intentionally interfered with Plaintiff's expected inheritance.

207.    Defendant Czymmek's actions have caused Plaintiff to lose his expected inheritance in an amount of no less than $500,000.00.[12]

208.    As a result of the above, Plaintiff seeks judgment in this Court against Defendant Czymmek in the amount no less than $500,000.00, or an amount as determined at trial in this matter.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress
### Against Defendants Fenstermaker and Czymmek

209.    Plaintiff incorporates paragraphs one through 208 above as if incorporated herein in their entirety.

210.    Defendants Fenstermaker and Czymmek are both aware that Plaintiff has an anxiety condition, for which he takes prescribed medication to mitigate the effects of his anxiety.

211.  .    Defendants Fenstermaker and Czymmek are both aware that Plaintiff's biological father killed himself at the age of 33 by shooting himself in the head and were aware of this fact as of 2011.

---

[12] Defendant Fenstermaker's net worth is, or was, approximately $1,500,000.00.

212.     Defendant Czymmek, who is responsible for making the false claims that Plaintiff is making threats against Defendant Fenstermaker, is generating these false claims to trigger Plaintiff's anxiety condition and to cause Plaintiff severe emotional distress.

213.     Defendant Czymmek has insinuated herself between Plaintiff, Stephen Fenstermaker and Defendant Fenstermaker in order to destroy Plaintiff's relationship with his family members in an effort to cause Plaintiff emotional distress by isolating him from his adoptive family and triggering Plaintiff's anxiety condition and severe emotional distress.

214.     Defendant Czymmek has held Defendant Fenstermaker incommunicado for the purpose of causing Plaintiff severe emotional distress.

215.     Defendant Czymmek has falsely accused Plaintiff's daughter Ashley Fenstermaker of attempting to commit suicide.

216.     Defendant Czymmek's false allegations of Ashley Fenstermaker's attempting to commit suicide were made in an effort to cause Plaintiff severe emotional distress.

217.     Defendant Czymmek intentionally misrepresented facts in an effort to alienate Plaintiff from Defendant Fenstermaker in an effort to enrich herself at Plaintiff's expense and to intentionally inflict severe emotional distress on Plaintiff.

218.     Defendant Fenstermaker directed his Delaware attorney to serve Plaintiff notices of Plaintiff's disinheritance after Defendant Fenstermaker moved his residence from Delaware to Connecticut.

219.     As a result of his relocation from Delaware to Connecticut, the notice of Defendant Fenstermaker's will that Defendant Fenstermaker directed be sent to Plaintiff almost certainly has no legal effect and, as a result, can only have been sent to harass, intimidate, belittle, and emotionally-distress Plaintiff.

34

220.    As a result of the fact that Defendant Fenstermaker had his Delaware attorney, rather than the trust's trustee, send Plaintiff notice of his exclusion as a beneficiary of the revocable *intervivos* trust, the notice has no legal effect.  As a result, this notice can only have been sent to harass, intimidate, belittle, and emotionally-distress Plaintiff.

221.    Plaintiff was severely emotionally distressed upon receiving these two notices and suffers recurring damage to this day.

222.    Defendant Fenstermaker has made repeated demeaning references to Plaintiff's anxiety condition.

223.    Defendant Czymmek has made repeated demeaning references to Plaintiff's anxiety condition.

224.    Defendant Fenstermaker repeatedly demanded information from Plaintiff regarding Defendant Fenstermaker's irrevocable intervivos *Crummey* trust in an effort to highlight Plaintiff's alleged inadequacy as a fiduciary, as a result of Plaintiff's refusal to illegally transfer Donald McEwen's and his estate's personal property to James David Scott.

225.    Defendant Fenstermaker is neither the trustee nor a beneficiary of the irrevocable intervivos *Crummey* trust mentioned in Paragraph 170.

226.    Defendant Fenstermaker intentionally disinherited Plaintiff and provided him with legally-inoperative pre-*mortem* validation notices in order to trigger Plaintiff's anxiety condition in an effort to cause Plaintiff severe emotional distress so that Defendant Fenstermaker could experience Plaintiff's severe emotional distress during his lifetime.

227.    Defendant Fenstermaker and Defendant Czymmek have intentionally refused to provide Plaintiff with Defendant Fenstermaker's mailing and residential addresses in

35

order to trigger and exacerbate Plaintiff's anxiety condition and to cause Plaintiff severe emotional distress.

228.    Defendant Fenstermaker, through Defendant Czymmek's and her husband's attorney, has falsely accused Plaintiff of threatening Defendant Fenstermaker in order to trigger Plaintiff's anxiety condition, thereby causing Plaintiff severe emotional distress.

229.    Defendant Fenstermaker, through Defendant Czymmek's and her husband's attorney, has claimed that he feels threatened by Plaintiff in order to justify his refusal to provide Plaintiff with his mailing and residential addresses.

230.    Defendant Fenstermaker's claims that he feels threatened by Plaintiff are levied, in part, to cause Plaintiff severe emotional distress.

231.    Plaintiff has never threatened Defendant Fenstermaker.

232.    Defendant Fenstermaker has falsely accused Plaintiff's daughter Ashley Fenstermaker of attempting to commit suicide.

233.    Defendant Fenstermaker's false allegations of Ashley Fenstermaker's attempting to commit suicide were made in an effort to cause Plaintiff emotional distress and to marginalize Plaintiff, whose biological father committed suicide at the age of 33.

234.    Defendant Czymmek directed her personal attorney to contact Plaintiff's New York attorney and make false claims that Plaintiff was threatening Defendants Czymmek, her family, and Defendant Fenstermaker in order to cause Plaintiff severe emotional distress.

235.    Plaintiff was damaged by Defendants Czymmek's and Fenstermaker's conduct.

236.    Plaintiff resorted to the care of a psychiatrist, Adella Wasserstein, M.D., as a direct result of Defendant Czymmek's conduct.

36

237.     Plaintiff was prescribed to double the dosage of his anxiety medication as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

238.     Plaintiff was hospitalized in the Columbia Presbyterian Hospital as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

239.     Plaintiff was hospitalized in Mount Sinai Hospital as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

240.     Plaintiff's hospitalization at Columbia Presbyterian Hospital and Mount Sinai hospital lasted for approximately 119 hours, until staff at Mount Sinai hospital cleared him to leave.

241.     Plaintiff is getting a divorce as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

242.     Plaintiff has had his relationship with his two daughters strained as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

243.     Plaintiff has had his relationship with his brother Stephen Fenstermaker damaged immensely as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

244.     Plaintiff has been diagnosed with and suffers from depression as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

245.     Plaintiff has been diagnosed with and suffers from a mood disorder as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

246.     Plaintiff suffers from physical symptoms, including shaking, inability to sleep, crying, and tremors as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

247.     Plaintiff suffers from feelings of dislocation and abandonment as a result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

248.     Plaintiff has suffered years of lost income because of his inability to work effectively as a direct result of Defendants Czymmek's and Fenstermaker's intentional infliction of emotional distress.

249.     As a result of the above, Plaintiff seeks judgment in this Court against Defendant Czymmek and Defendant Fenstermaker jointly and severally as a result of their intentional infliction of emotional distress on Plaintiff in the amount no less than $2,000,000.00, or an amount as determined at trial in this matter.

## CONCLUSION

250.     Plaintiff respectfully requests judgment in the form and manner as stated above.

WHEREFORE, the Plaintiff, Scott L. Fenstermaker, respectfully requests a judgment of this Court as follows:

251.     With respect to Cause of Action One, Plaintiff requests a judgment invalidating the November 28, 2016 last will and testament of Defendant Fenstermaker on the grounds that Defendant Fenstermaker lacked testamentary capacity when he executed the November 28, 2016 last will and testament, that Defendant Fenstermaker's November 28, 2016 last will and testament was procured by undue influence, duress, fraud and in violation of public policy and as Defendant Fenstermaker seeks state action by court involvement to secure the

punishment for Plaintiff's exercise of his First and Fourteenth Amendments rights to free speech and affiliation as described above.

        252.      With respect to Cause of Action Two, Plaintiff requests a judgment invalidating Defendant Fenstermaker's undisclosed revocable, *intervivos* trust on the grounds that Defendant Fenstermaker lacked dispositive capacity when he executed the undisclosed revocable, intervivos trust, that Defendant Fenstermaker's undisclosed revocable, *intervivos* trust was procured by undue influence, duress, fraud and in violation of public policy and as Defendant Fenstermaker seeks state action by court involvement to secure the punishment for Plaintiff's exercise of his First and Fourteenth Amendments rights to free speech and affiliation as described above.

      With respect to Cause of Action Three, Plaintiff requests an Order of this court directing an accounting of Defendant Fenstermaker's affairs from November 28, 2016 to the present.

      With respect to Cause of Action Four, Plaintiff requests a judgment against Defendant Czymmek in an amount to be determined at trial, but in no case less than $500,000.00.

      With respect to Cause of Action Five, Plaintiff requests a judgment against Defendants Fenstermaker and Czymmek in an amount to be determined at trial, but in no case less than $2,000,000.00.

      And for such other relief which to this Court may seem reasonable and just.

Dated: ~~September 8, 2017~~ *March 13, 2018*
      New York, New York

Scott L. Fenstermaker, Esq.
Plaintiff *Pro Se*
101 Sherman Avenue, Apt 4C
New York, New York 10034
(212) 304-0236 (home and facsimile)
(917) 817-9001 (cellular)
(212) 302-0201 (work)
scott@fenstermakerlaw.com

To:   Clerk of the Court
      United States District Court
      141 Church Street
      New Haven, Connecticut 06510

      PNC Bank, National Association, through counsel
      Attn:   Office of General Counsel
      249 Fifth Avenue
      One PNC Plaza
      Pittsburgh, PA 15222

      PNC Bank, National Association, through counsel
      Attn:   Office of the General Counsel
      300 Fifth Avenue
      The Tower at PNC Plaza
      Pittsburgh, PA 15222

      Lloyd Fenstermaker, through counsel
      100 Danbury Road, Apt 2I
      Ridgefield, Connecticut 06877

      Martha Czymmek, through counsel
      2 Hunter Lane
      Ridgefield, Connecticut 06877